I1JJTABS                    Sentence

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                          S1 16 Cr. 747 AKH

 5   ZIMMIAN TABB,

 6            Defendant.

 7   ------------------------------x

 8

 9                                       January 19, 2018
                                         12:05 p.m.
10

11

12   Before:

13               HON. ALVIN K. HELLERSTEIN,

14                                       District Judge

15

16                      APPEARANCES

17

18   GEOFFREY S. BERMAN,
          Interim United States Attorney for the
19        Southern District of New York
     DAVID DENTON,
20        Assistant United States Attorney

21

22   RICHARD E. SIGNORELLI,
          Attorney for defendant Tabb
23

24

25
```

1              (In open court)

2              (Case called)

3              THE COURT:  Good afternoon, Mr. Tabb.

4              Be seated, everybody.  Mr. Tabb, it is my duty to

5     sentence you today.  A presentence investigative report was

6     prepared and given to your lawyer, and I take it you've seen

7     it?

8              THE DEFENDANT:  Yes.

9              THE COURT:  You've read it?

10             THE DEFENDANT:  Yes.

11             THE COURT:  You discussed it fully with Mr.

12    Signorelli?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Mr. Signorelli, you have made some

15    objections to factual matter.  I confine myself to factual

16    matter in the presentence investigative report.

17             Have your objections been resolved?

18             MR. SIGNORELLI:  No.

19             THE COURT:  I'll do them right now.

20             MR. SIGNORELLI:  Thank you, Judge.

21             I'm looking at my letter, dated July 27th.

22             THE COURT:  I am looking at the presentence

23    investigative report.  Which paragraphs do you challenge?

24             MR. SIGNORELLI:  The first one is Paragraph 10, not

25    necessarily material, but we seek a correction nonetheless.

1          THE COURT:  What is the correction you want?

2          MR. SIGNORELLI:  Mr. Tabb had a valid learning

3    driver's permit at the time of his arrest.  Whether there was a

4    valid arrest warrant issued against him known by arresting

5    officers at the time of his arrest was disputed by the defense

6    in connection with the suppression motion.

7          THE COURT:  Just a minute.  (Pause)  Is anything in

8    here factually wrong?

9          MR. SIGNORELLI:  I think with regard to Paragraph 10,

10   it is more in the way of a supplement.

11         THE COURT:  The sentence next to last sentence, "Tabb

12   did not have a driver's license."  Do you want me to add, "but

13   had a learner's permit"?

14         MR. SIGNORELLI:  If you wouldn't mind, your Honor.

15         THE COURT:  Does the government object?

16         MR. DENTON:  No, your Honor.

17         THE COURT:  Is paragraph 10 satisfactory, Mr.

18   Signorelli?

19         MR. SIGNORELLI:  Yes, your Honor.

20         THE COURT:  The answer is?

21         MR. SIGNORELLI:  Yes, yes.

22         THE COURT:  What is your next objection?

23         MR. SIGNORELLI:  Paragraph 14.  It is our contention,

24   respectfully, that the bags found in the apartment were not

25   intended to be used for the distribution of heroin or crack

1   cocaine.  Again it is not necessarily a material objection.

2            THE COURT:  Just a minute, just a minute.  (Pause)  Is

3   there anything here that is wrong?

4            MR. SIGNORELLI:  No, because the officer used the

5   word, "typically."  My objection is again by way of supplement

6   of information.

7            THE COURT:  It is based on some, must be based on some

8   kind of testimony?

9            MR. SIGNORELLI:  There is no testimony, but it is

10  based on all of the discovery in the case and my knowledge of

11  the whole situation.

12           THE COURT:  You can't testify.

13           MR. SIGNORELLI:  Again --

14           THE COURT:  Your client hasn't testified.  So

15  Paragraph 14 says it is accurate in its terms.  The objection

16  to it is denied.  What is next?

17           MR. SIGNORELLI:  The next is the next two objections

18  deal with the career offender issue, which I would like to have

19  an opportunity to --

20           THE COURT:  We'll debate that intensely, but that is

21  not factual.

22           MR. SIGNORELLI:  The next factual issue, this should

23  not be a problem.  Paragraph 57, Mr. Tabb also has a maternal

24  sister, Deon, age 31.

25           THE COURT:  One minute.

1          MR. SIGNORELLI:  Paragraph 57, your Honor.

2          (Pause)

3          THE COURT:  What is wrong with this one?

4          MR. SIGNORELLI:  It should add that he has a maternal

5    sister Deon, D E 0 N, age 31.

6          THE COURT:  Five siblings?

7          MR. SIGNORELLI:  Yes.

8          THE COURT:  Is that right?

9          MR. SIGNORELLI:  Yes.

10          THE COURT:  So we'll change the first sentence to say

11    the defendant has five siblings.  Is the government okay with

12    that?

13          MR. SIGNORELLI:  Correct, your Honor, and the addition

14    is the maternal --

15          THE COURT:  Is the government all right with that?

16          MR. DENTON:  We are fine with the first provision,

17    your Honor, yes.

18          THE COURT:  The one that you now want to add, how does

19    she fit in this chronology?

20          MR. SIGNORELLI:  She is age 31.

21          THE COURT:  What is her name?

22          MR. SIGNORELLI:  Deon, D E 0 N.

23          THE COURT:  What is her last name?

24          (Off-the-record discussion)

25          MR. SIGNORELLI:  G A Y N 0 R, Gaynor.

I1JJTABS                      Sentence

1            THE COURT:  Gaynor?

2            MR. SIGNORELLI:  Yes.

3            THE COURT:  Age 31.  What does she do?

4            MR. SIGNORELLI:  She is a teacher, your Honor.

5            THE COURT:  Where?

6            (Off-the-record discussion)

7            MR. SIGNORELLI:  She teaches at an Atlanta junior high

8     school.

9            THE COURT:  In Atlanta?

10           MR. SIGNORELLI:  Yes.

11           THE COURT:  So the second sentence will be the

12    following:  "Deon Gaynor, age 31, is a teacher at a junior high

13    school in Atlanta, Georgia."

14           MR. SIGNORELLI:  Yes, your Honor, that's correct.

15           THE COURT:  Is the government all right with that?

16           MR. DENTON:  No objection.

17           THE COURT:  As amended, are you okay with Paragraph

18    57?

19           MR. SIGNORELLI:  Yes.  The final factual correction is

20    in Paragraph 68, the Year 2006 should be 2007.

21           THE COURT:  Okay with that?

22           MR. DENTON:  Yes, your Honor.

23           THE COURT:  Mr. Denton?

24           MR. DENTON:  Yes, your Honor.

25           THE COURT:  Subject to those changes, anything else

1   factually?

2          MR. SIGNORELLI:  No, your Honor.

3          THE COURT:  I find the facts, with amendments made

4   now, as stated in the presentence investigative report.

5          Does the government have any factual objections?

6          MR. DENTON:  No, your Honor.

7          THE COURT:  All right.  Now, the next thing I want to

8   take up with respect to your submission which I've read, on

9   Page 20 you write, Mr. Signorelli:

10         "These untreated conditions having to do with various

11  psychological issues clearly resulted in Mr. Tabb having a

12  significant diminished capacity with regard to the commission

13  of this offense, this offense conduct, and it is reasonable to

14  conclude that his psychiatric problems directly and negatively

15  impacted his judgment when he allowed Mr. Jones to bring his

16  crack into the vehicle and agreed to drive Mr. Jones around in

17  the vehicle with Mr. Jones' crack in the vehicle."

18         The crime of which Mr. Tabb was charged and to which

19  he pleaded guilty was possession of cocaine base with an intent

20  to distribute.  That is a crime requiring a specific intent.

21  To the extent that he had diminished capacity, you're arguing

22  he did not have this specific intent and you're arguing in a

23  way that is inconsistent with the plea agreement and with the

24  allocution.  You're adding your testimony to that of your

25  client.  Your testimony is not an expert's testimony and your

1  argument is incompetent, as far as I can see.

2          Unless you want to make a motion to withdraw the plea

3  of guilty?

4          MR. SIGNORELLI:  No, your Honor.  I really wanted to

5  emphasize that --

6          THE COURT:  He has psychological problems which you do

7  comment in summarizing Dr. Drob's report, but these comments by

8  you are inappropriate unless you want to make a motion to

9  withdraw the plea agreement.

10         MR. SIGNORELLI:  I will withdraw the comment, your

11  Honor, on behalf of my client.  I really want to emphasize the

12  problems in his background and how that could reasonably affect

13  his judgment without in any way minimizing the intent he had to

14  commit this crime as he allocuted before your Honor.

15         THE COURT:  That's right, because he was very clear

16  that he knew what he was doing.

17         MR. SIGNORELLI:  And he did know what he was doing.

18         THE COURT:  Very clear.  He said in his plea

19  agreement --

20         MR. SIGNORELLI:  Your Honor, I see his statement at

21  Page 15, the bottom of the plea transcript, if that is what

22  you're referring to.  We stand by that statement.  If I may

23  read it?

24         THE COURT:  Go ahead.

25         MR. SIGNORELLI:  From Mr. Tabb at his plea, Page 15.

"At the time by assisting another person to possess, with the intent to distribute, crack cocaine was wrong and illegal even if the crack cocaine did not belong to me.  I am sorry for having committed this crime and I accept responsibility for having committed this crime which I really am."

THE COURT:  Yes.

MR. SIGNORELLI:  There are other statements as well.

THE COURT:  Yes.

MR. SIGNORELLI:  Your Honor had follow-up questions.

I don't want any of the other issues in this case, I don't want this to be a distraction in any way with regard to some of the other issues we need to discuss here.

THE COURT:  Mr. Signorelli, what you say is satisfactory you're withdrawing your comment that I read out.

The second part that bothered me, Page 22, you said Mr. Tabb pleaded guilty in a timely manner.  That is true. Despite the fact that this was a potentially triable case, unlike the usual federal narcotics cases.  Even though, you go on, it was potentially triable, nonetheless, you say Mr. Tabb chose to accept responsibility and waive any defenses he had to the charges.

I believe I asked you if you believed that the government had a prima facie case, could prove a prima facie case.  Did I ask you that question, Mr. Signorelli?

I1JJTABS                        Sentence

1              MR. SIGNORELLI:  You didn't, but I believe they did.

2     Even if you didn't ask that question, I will state this:  The

3     government did --

4              THE COURT:  How are you able to have a potentially

5     triable case?

6              MR. SIGNORELLI:  I think --

7              THE COURT:  Why would you plead your client guilty if

8     you had a potentially triable defense?

9              MR. SIGNORELLI:  It was a potentially triable case,

10    but it was a case he wanted to plead guilty with and accept

11    responsibility for, and that is why when --

12             THE COURT:  Excuse me one minute.

13             (Off-the-record discussion)

14             THE COURT:  Go ahead.

15             MR. SIGNORELLI:  This actually came up at the plea, if

16    I may direct your attention to the plea transcript, at the

17    bottom of Page 13, you asked me:

18             "Do you know of any defenses that would trump the

19    proof?"

20             And I answered, "Whatever defenses my client would

21    like to waive in order to accept responsibility," and then you

22    asked, "Does he have any defenses that would be available?"

23             And I indicated --

24             THE COURT:  The whole section is as follows on Page

25    13.  Mr. Signorelli, have you reviewed the evidence?  "Yes,"

1    you answered, "I have in great detail."  I asked, "Do you feel

2    the government could prove a prima facie case against your

3    client?"  Answer, "Yes, your Honor."

4            "Do you know of any defenses that would trump whatever

5    defenses?"

6            "My client to like to waive in order to accept

7    responsibility."

8            I think what you're saying is potentially triable is

9    not based on anything that is realistic.  Your client clearly

10   pleaded guilty.

11           MR. SIGNORELLI:  Absolutely.  I just wanted to note --

12           THE COURT:  I wanted to clear up the record.

13           MR. SIGNORELLI:  Yes.

14           THE COURT:  All right.  My next point is to fix the

15   offense level under the guidelines.

16           MR. SIGNORELLI:  Your Honor, could I just mention that

17   his family is here in the courtroom.

18           THE COURT:  You'll get to it.  You'll have time to

19   talk about it.

20           MR. SIGNORELLI:  Thank you.

21           THE COURT:  The sentencing guidelines are analyzed

22   under Section 2D1.1.  The basic offense level is 14.

23   Subparagraph H1.2 is disputed because you believe that he did

24   not know about the stash house?

25           MR. SIGNORELLI:  No, we are not disputing that, your

I1JJTABS                          Sentence

1    Honor.

2               THE COURT:  You are not disputing that?

3               MR. SIGNORELLI:  No.  We stipulated to that.

4               THE COURT:  So the next level upward adjustment of 2.

5    It brings the gross offense level to 16.  With credit for

6    timely acceptance of responsibility, that brings it down to 13,

7    Level 13.  In conjunction with a criminal history of 6, which

8    we'll talk about later, that yields a range of punishment of 33

9    to 41 months.  You agree, Mr. Signorelli?

10              MR. SIGNORELLI:  Yes, your Honor, that's correct.

11              THE COURT:  Does the government agree?

12              MR. DENTON:  Only to the extent that excludes the

13   career offender calculation, your Honor.

14              THE COURT:  I'll next get into it.

15              The next question is whether the career offender

16   provisions of the guidelines apply, and you argue that in your

17   brief, and the government has rebutted that in the brief.

18   Basically your issue is this:

19              You contend that the two prior convictions which are

20   the basis of the elevation to career offender constitute an

21   attempt, committing second degree assault and a conspiracy to

22   distribute narcotics, and you argue that an attempt is a crime

23   by itself and does not categorically entail violence, but only

24   conduct that is at a point that inexorably leads to violence.

25              Similarly, that conspiracy is also a crime to itself,

1    is planning to violate the narcotics laws, but since the

2    conspiracy is the crime, it is merely planning and not a

3    narcotics act, and you argue that an attempt and conspiracy are

4    not the types of crimes that under the Johnson case in the

5    United States Supreme Court should be considered as crimes of

6    violence or distribution of illegal substances.  That is your

7    argument, right, Mr. Signorelli?

8            MR. SIGNORELLI:  My argument is as far as the violent

9    felony issue.  My argument includes that attempt issue, but it

10   also more directly speaks to the issue as to if it was a

11   completed crime.  If I may be heard on that?

12           THE COURT:  Go ahead.

13           MR. SIGNORELLI:  Your Honor, this, I believe, does not

14   call for the rule of lenity in my client's favor because I

15   think it is very clearcut.  The Walker decision cited by the

16   government is no longer controlling for these specific reasons.

17   I am assuming it is a completed crime for the purposes of this

18   analysis, though I also stand by the other argument regarding

19   the attempt that your Honor mentioned.

20           Let's assume for the present purpose it is a completed

21   crime of second degree assault under New York law as opposed to

22   his attempting to commit that crime which is what he was

23   convicted of.  The career offender definition which is repeated

24   in my papers requires that force be used to constitute a,

25   "crime of violence for career offender purposes."

I1JJTABS                      Sentence

          So it is that element of force, and let me just read

it.  "The term crime of violence involves an element, the use,

attempted use or threatened use of physical force against the

person of another."

          The New York statute involved here does not have that

as an element.  It has a causation of injury as an element.

The Chrzanoski -- and I am probably mangling the pronounciation

of the name of that case.

          THE COURT:  M A R D A Z A Y.

          MR. SIGNORELLI:  327 F.3d 188.

          THE COURT:  Mardazay is 11 NY3d 460.

          MR. SIGNORELLI:  Sorry, your Honor?

          THE COURT:  The case of People against Mardazay is --

          MR. SIGNORELLI:  I am actually referring to a Second

Circuit case, if I may, your Honor.  It would be Chrzanoski

versus Ashcroft, and this --

          THE COURT:  C H R Z A N 0 S K I?

          MR. SIGNORELLI:  Correct.

          THE COURT:  327 F.3d 188 at Page 2003.

          MR. SIGNORELLI:  Combining this binding precedent

which is good law and applies directly to this case along with

the Johnson 2010 decision, which I will get to in a moment,

unquestionably indicates, as the Villanueva court adjudicated,

that second degree assault, the underlying statute involved in

my client's situation, is not a crime of violence for career

1   offender purposes.   The holding of the Chrzanoski decision --

2              THE COURT:  May I interrupt.  The statute involved is

3   New York Penal Law, Section 120.05 (2), which defines a crime

4   as follows:

5              "A person is guilty of assault in the second degree

6   when, with intent to cause physical injury to another person,

7   he causes such injury to such person or to a third person by

8   means of a deadly weapon or a dangerous instrument."

9              So he is using a deadly weapon or dangerous instrument

10  to cause actual injury to a person.

11             MR. SIGNORELLI:  That's correct.  That is the statute.

12             THE COURT:  You say that doesn't mean force?

13             MR. SIGNORELLI:  Absolutely not under Chrzanoski and

14  Johnson, it absolutely has no requirement requiring force.

15             THE COURT:  You will have to elaborate on that.

16             MR. SIGNORELLI:  Of course I will, if I may.  Thank

17  you for the opportunity, your Honor.

18             Chrzanoski interpreted the exact same issue with

19  regard to an analogous, almost identically-worded Connecticut

20  statute, and it held because the use of force is not an element

21  of that particular statute, which is the same as this statute,

22  we conclude that third degree intentional assault under

23  Connecticut law is not a crime of violence under Section 16

24  (a), which is, by the way, the same as the career offender

25  definition section, and the court held -- the court

1    distinguished in great detail the difference between causing

2    injury and the use of physical force to cause injury.

3           Where the statute does not require as an element like

4    the Connecticut statute in Chrzanoski, and New York statute in

5    Mr. Tabb's case, does not require an element requiring the use

6    of force, it is not a crime of violence for the purposes of the

7    career offender statute.

8           Now, Johnson, the 2010 decision, goes into more

9    detail, and this is an opinion by Justice Scalia about what

10   this force means, and they go beyond what the Chrzanoski case

11   said and indicated that:

12          "We think it clear that in the context of a statutory

13   definition of violent felony, the phrase physical force means

14   violent force; that is, force capable of causing physical pain

15   or injury to another person," and they go on to further

16   describe it as being strong physical force.

17          THE COURT:  How does a causation of injury using a

18   deadly weapon or dangerous instrument entail anything but

19   force?

20          MR. SIGNORELLI:  The Villanueva and other cases have

21   addressed that very point, and the pattern jury instructions I

22   provided to your Honor also indicate that substances can be

23   used to commit the crime.

24          THE COURT:  What?

25          MR. SIGNORELLI:  Substances, drugs or the withholding

I1JJTABS                        Sentence

1    of medicine, as the Chrzanoski indicates.

2              THE COURT:  Not according to New York law.

3              MR. SIGNORELLI:  It is actually a pattern jury

4    instruction which I provided as an exhibit, your Honor, with

5    the materials.

6              THE COURT:  There has to be a deadly weapon or

7    dangerous instrument.

8              MR. SIGNORELLI:  If I may?

9              THE COURT:  Withholding is not a deadly weapon or

10   dangerous instrument.

11             MR. SIGNORELLI:  Your Honor, I am looking at the jury

12   instructions, pattern jury instructions which is Exhibit G to

13   my sentencing memo, dangerous instrument includes substances

14   and a vehicle.

15             THE COURT:  Where is the pattern jury instruction?

16             MR. SIGNORELLI:  Exhibit G.  By the way, your Honor, I

17   want to make sure you also received our reply papers yesterday

18   in response to the government's memo.

19             THE COURT:  I have seen it.

20             MR. SIGNORELLI:  I faxed it to Chambers.

21             THE COURT:  I received it already.

22             MR. SIGNORELLI:  It was a five-page letter.

23             THE COURT:  Where are you reading from in the pattern

24   jury instructions?

25             MR. SIGNORELLI:  Exhibit G to my main sentencing

I1JJTABS                          Sentence

1    submission.

2              THE COURT:  I am looking at Exhibit G.  What part of

3    it?

4              MR. SIGNORELLI:  It is the third page, "Dangerous

5    instrument means any instrument, article or substance including

6    a vehicle."

7              THE COURT:  Page 3?

8              MR. SIGNORELLI:  The page number is 2, but it is the

9    third page of the exhibit, Page 2, numbered Page 2.

10             THE COURT:  That's the definition of intent.

11             MR. SIGNORELLI:  I am sorry.  This is the pattern jury

12   instruction for attempted second degree.  It is in that same

13   Exhibit G.  I don't know the exact page in the exhibits, but it

14   is assault second degree, the pattern jury instructions in

15   Exhibit G.  It is the second to last page of Exhibit G.

16             THE COURT:  I have it.

17             MR. SIGNORELLI:  "Dangerous instrument means substance

18   or vehicle," and if I may quote from the Chrzanoski decision

19   which is a binding precedent here?  May I?

20             THE COURT:  You may.

21             MR. SIGNORELLI:  "Moreover" -- quoting from the Second

22   Circuit decision -- "Moreover, human experience suggests

23   numerous examples of intentionally causing physical injury

24   without the use of force such as a doctor who deliberately

25   withholds vital medicine from a sick patient."

1          THE COURT:  That doesn't fit the New York law.

2          MR. SIGNORELLI:  Well, in any event --

3          THE COURT:  I am reading what deadly weapon means, and

4    I don't find what you're saying.

5          MR. SIGNORELLI:  Your Honor, if you go to the bottom

6    of the page, it defines dangerous instrument which is what the

7    Villanueva court found to be very significant.

8          THE COURT:  It says, "Any instrument, article or

9    substance, including a vehicle, which under the circumstances

10   in which it is used, attempted to be used, or threatened to be

11   used, is readily capable of causing death or other serious

12   physical injury that is serious and protracted disfigurement,

13   protracted impairment of health or protracted loss or

14   impairment of the function of any bodily organ."

15         I don't follow you.

16         MR. SIGNORELLI:  Well, in the Villanueva decision, the

17   judge found that that does not under Chrzanoski and Johnson --

18         THE COURT:  What were the facts of that case,

19   intoxication?

20         MR. SIGNORELLI:  The facts don't matter.

21         THE COURT:  What were the facts of that case,

22   intoxication?

23         MR. SIGNORELLI:  The Villanueva case?

24         THE COURT:  Yes.

25         MR. SIGNORELLI:  Under a categorical approach --

1          THE COURT:  Just answer my question, please.

2          MR. SIGNORELLI:  I have to look at the case because I

3     was applying the categorical approach, as the judge did.

4          THE COURT:  I don't accept your arguments, Mr.

5     Signorelli.  I have read the definition of the crime, and it

6     clearly fits a crime of violence.  You want to argue the issue

7     of attempt.

8          MR. SIGNORELLI:  Well, your Honor, the issue of -- we

9     also have the additional issue of the attempt because it

10    doesn't fit the generic definition of attempt, and we argue in

11    great detail, with New York case law, that the elements under

12    New York law for attempt simply do not categorically match the

13    elements that apply to the definition of a crime of violence.

14         However, your Honor, if I may revisit the issue

15    because this is so important to my client.

16         THE COURT:  You made the argument, and I have studied

17    the argument and I told you my impression of the argument.  How

18    many times do you want to repeat?

19         Important or not important, it is an issue of law, and

20    I have ruled.

21         MR. SIGNORELLI:  We also stand by the attempt argument

22    that it is not a categorical match for all the details and the

23    law cited in the main sentencing submission, it is not a

24    categorical match.  For that separate reason it also doesn't,

25    we respectfully submit, it doesn't --

1          THE COURT:  Apart from the case law, an attempt is

2    conduct which although achieving, not achieving the ultimate

3    objective defined as a crime, comes so close as not to have any

4    equivocation about it whatever.

5          If you intend violence and exercise conduct that is

6    inexorably pointing to violence, in my judgment, it is

7    tantamount to violence.  That is the teaching of the Walker

8    case.  Do I have it right, Mr. Denton?

9          MR. DENTON:  Yes, your Honor.

10         THE COURT:  Although that precedes Johnson, I do not

11   read anything in Johnson that is diminishing the precedential

12   force of Walker.  So I hold that that crime of attempt fits the

13   definition both according to the sentencing guidelines and

14   according to the precedent and according to logic of a crime of

15   violence.  I so hold.

16         Do you want to argue conspiracy?

17         MR. SIGNORELLI:  Yes, your Honor.

18         With regard to the conspiracy, the Martinez Cruz

19   decision -- the government doesn't address this in its response

20   papers -- does not rest on the commentary versus text

21   distinction.  The Martinez Cruz is a 10th Circuit case which is

22   squarely on point to Mr. Tabb's situation.

23         THE COURT:  I am not following that.  I don't think it

24   is sound law.

25         MR. SIGNORELLI:  Your Honor, if may just continue

I1JJTABS                          Sentence

1    because of the importance of this to my client.  The Martinez

2    Cruz case holds that the federal conspiracy statute is not a

3    generic match for Title 21, Section 846.  For that reason, it

4    doesn't qualify as a controlled substance offense for the

5    purposes of applying the career offender guideline.

6            The judge in the Lisbon decision, the District of

7    Maryland, found that to be not conclusively shown, but close

8    enough that pursuant to the rule of lenity, he ruled in the

9    defendant's favor, and that was a RICO conspiracy, but it was

10   similar reasoning and an analogous situation, and he ruled in

11   favor of the defendant on the rule of lenity.

12           He found the majority of jurisdictions, as the 10th

13   Circuit did in Martinez Cruz, required an overt act with regard

14   to the commission of a conspiracy offense.  Because the federal

15   conviction does not, it sweeps more broadly under the Shabs

16   versus United States decision; and, therefore, is a categorical

17   mismatch; and, therefore, the controlled substances definition

18   is not satisfied by the particular elements of the federal

19   narcotics conspiracy law.

20           The Martinez Cruz court did not have to resort to the

21   rule of lenity.  They found in the defendant's favor based on

22   their complete analysis over 58 jurisdictions, I believe it

23   was, of what the law was, and that particular holding has never

24   been adjudicated in the Second Circuit.

25           What has been adjudicated in the Second Circuit is the

I1JJTABS                              Sentence

1    issue of whether commentary can be used to explain the text,

2    and in the Nutter and Jackson decisions of 20 years ago, that

3    goes against our argument, but this is a different argument

4    which is not addressed by the government.  It is a generic

5    conspiracy argument.

6              THE COURT:  Your argument is when Johnson changed the

7    law, the commentary is contradictory to Johnson and you can't

8    follow the commentary.

9              MR. SIGNORELLI:  Not necessarily, your Honor.

10             But my argument is, and under the categorical approach

11   of Dechamps and the whole line of cases, frankly, beginning

12   with Taylor in 1990, which is still good law, you have to look

13   at the elements, and that was my argument on the crime of

14   violence which your Honor has ruled on, and we respectfully, of

15   course, feel otherwise.

16             But there has to be a categorical match.  It doesn't

17   matter what the underlying facts are.  You look at the

18   elements.  It is a cold, calculated analysis.

19             THE COURT:  So the elements of a conspiracy is an

20   agreement with one or more people to violate the laws of the

21   United States in this respect to distribute an illegal

22   substance.  Conspiracy requires a specific intent.  Like an

23   attempt, it is not ambiguous conduct.  It is a conspiratorial

24   comment to bring about the very violation that the agreement is

25   about.  As such logically, in my opinion, it should be

1   considered as a substantive crime in terms of punishment and in

2   terms of career offender.  United States against Jackson, a

3   1995 decision of the Second Circuit so held.

4          Again I find nothing in Johnson that mitigates the

5   precedential force of that decision, and I think I have to

6   follow it.  So logically, precedentially I disagree with your

7   argument and I hold that the prior crime of conspiracy to sell

8   narcotics is a crime of narcotics, which with the crime of

9   violence leads inexorably to a finding that the defendant is a

10  career offender since he matches all the other aspects of the

11  definition.

12         MR. SIGNORELLI:  The Johnson case doesn't apply to the

13  narcotics conspiracy context.  It is really an argument that

14  relates to a comparison of the elements of the federal

15  narcotics statute to what a generic conspiracy, the elements of

16  a generic conspiracy.  Johnson had nothing to do with that

17  directly although, of course, it is an important decision

18  overall.  The elements of a generic conspiracy which we have to

19  look at and applying the categorical --

20         THE COURT:  What are those elements?

21         MR. SIGNORELLI:  The elements are an agreement to

22  commit a crime and committing an overt act in furtherance of

23  that crime.

24         THE COURT:  Is that necessarily part of a definition

25  of narcotics crime?

I1JJTABS                    Sentence

1          MR. SIGNORELLI:  That is right, that is an argument

2    actually why his prior narcotics conspiracy is a mismatch.  It

3    does not match the generic.

4          THE COURT:  You need to prove not only an agreement,

5    but purposeful acts furthering that agreement and accomplishing

6    that agreement.

7          MR. SIGNORELLI:  Actually, that is not what is

8    required under the federal narcotics conspiracy statute.

9          THE COURT:  An agreement is not sufficient.

10         MR. SIGNORELLI:  Under the statute, no overt act is

11   required, and it is well established that no overt act is

12   required to commit narcotics conspiracy,.

13         THE COURT:  No overt act has to be pleaded, but

14   purposeful conduct has to be proved.

15         MR. SIGNORELLI:  It is not an element of the narcotics

16   conspiracy case.

17         THE COURT:  I disagree.  You're confusing pleading and

18   proof.

19         MR. SIGNORELLI:  My focus is on the elements of

20   applying the categorical approach, your Honor.

21         THE COURT:  I understand, Mr. Signorelli.  Let me hear

22   the government on the issue of narcotics conspiracy, overt act.

23         MR. DENTON:  Just to start where your Honor was, I

24   think that your analysis is correct that obviously it is part

25   of the standard jury instruction on a conspiracy that things

1    have to go beyond the talking stage, so there is sort of an

2    element of proof of conduct that is required.

3            THE COURT:  And I so instruct the jury every time I

4    have a narcotics case.

5            MR. DENTON:  This is a familiar concept.

6            At a higher level Mr. Signorelli's view an overt act

7    is necessarily a component of a generic conspiracy is wrong.

8    That is why there is only one circuit that has adopted it and

9    has acknowledged its decision is at odds with the law of every

10   other circuit that has considered this.  I think your Honor's

11   correct to reject that as bad law and accept the majority view.

12           THE COURT:  I read your letter brief and I read the

13   reply.  I read Mr. Signorelli's well-argued but I think wrong

14   argument as to the state of the career offender law.  I find

15   that the defendant is a career offender and that the range of

16   custodial punishment is 151 to 188 months.

17           What is the maximum under the statute, Mr. Denton?

18           MR. DENTON:  I am sorry, your Honor.  Give me one

19   second here.  The maximum penalty, your Honor, is 20 years

20   imprisonment, a maximum term of --

21           THE COURT:  You didn't file a prior offense?

22           MR. DENTON:  That's correct.

23           THE COURT:  That would have brought 20 years I think.

24           MR. DENTON:  No.  The maximum term is 20 years, your

25   Honor.  There is no prior felony information filed which would

1   have doubled it to 40.

2          MR. SIGNORELLI:  I may add there is no mandatory

3   minimum here.

4          THE COURT:  Correct.

5          MR. SIGNORELLI:  The statutory range is zero to 20.

6          THE COURT:  That's right.  I agree.  I so find.

7          So the range of custodial punishment as a career

8   offender is 151 to 188 months.  This is followed by supervised

9   release of three years.  Do you agree, Mr. Denton?

10          MR. DENTON:  That is the mandatory minimum, yes, your

11   Honor.

12          THE COURT:  Not mandatory minimum.  There is no

13   mandatory minimum.

14          MR. DENTON:  The mandatory-minimum term of supervised

15   release.

16          THE COURT:  Three years, right.

17          MR. DENTON:  Yes.  The court has the discretion to

18   impose up to lifetime supervised release.

19          THE COURT:  Three years to life because it is a

20   narcotics crime?

21          MR. DENTON:  That's correct, your Honor.

22          THE COURT:  Correct.  Okay.  So I overrule the

23   objections raised by Mr. Signorelli and I hold that Mr. Tabb is

24   punishable as a career offender, and that results in a range of

25   custodial punishment provided by the guidelines of 151 to 188

1      months.  Whether it be 33 or 41 months or 41 months or 151 to

2      188 months, it is followed by supervised release of three years

3      to life.  Mr. Tabb has been detained since September 27, 2016.

4              That is roughly 16 months, almost 16 months.  Do I

5      have that right?

6              MR. SIGNORELLI:  Yes, your Honor.

7              THE COURT:  He is 29 years' old.  He is a United

8      States Citizen.  I would like to hear Mr. Signorelli in

9      argument.

10             MR. SIGNORELLI:  Yes, your Honor.  Thank you for this

11     opportunity.  I am obviously disappointed.  We very

12     respectfully take exception, but I will move on to the 3553 (a)

13     factors.

14             THE COURT:  You have appellate rights.  You reserved

15     them in the plea agreement.

16             MR. SIGNORELLI:  I did.

17             THE COURT:  No doubt you will be making these

18     arguments before the Second Circuit?

19             MR. SIGNORELLI:  If necessary, but as I argue in these

20     papers, regardless of the guideline range, a reasonable

21     sentence can be imposed here.

22             THE COURT:  That is what I would like to talk about

23     now.  I really would like you to focus on the long prior

24     history, which is rare to see.

25             MR. SIGNORELLI:  That was the point, that is why I had

1   to write so much, your Honor, provide you as much information

2   as I possibly could.

3           I first would like to point out his family is here.

4   They're here to support him.  His fiance.  He has several

5   cousins here, Reggie, Stacey, Casey, Batania, his friend.  His

6   father from North Carolina would have been here but wasn't able

7   to travel.  His mother Ms. Wilson is here, and so I would like

8   to -- I appreciate their support of my client.

9           THE COURT:  Thank you all for coming.

10          MR. SIGNORELLI:  This is obviously a very important

11  time, and since my client has no children, it is probably the

12  most important day of his life, hands-down.

13          In the voluminous sentencing papers, and I apologize

14  for the volume, your Honor --

15          THE COURT:  Mr. Signorelli, you have an obligation as

16  a lawyer to act zealously on behalf of your client, and I have

17  no problem with the length.  I don't have any problem with

18  anything you have done.

19          MR. SIGNORELLI:  Thank you, your Honor.

20          I have to say, I think it is probably clear by the

21  effort, I really do believe in my client and his ability to

22  turn his life around.  He is still young, but he is aging out

23  of his 10 years and 20's.  He came from -- I don't want to go

24  into great detail with his family here, the papers actually

25  detail a great deal of problems with his upbringing,

extraordinary problems, and Dr. Drob has spoken about the

impact those problems had on him, the neglect, abandonment, the

drug use, perhaps some damage done to him physically.

     All of that is in the papers, and again unless your

Honor wants these details in open court, I would reserve.

     THE COURT:  It is up to you.  You can do whatever you

want.

     MR. SIGNORELLI:  Be that as it may, his upbringing was

rough and very difficult.  A mother who has written a nice

letter on her son's behalf, by her own admission, was a drug

user, drug abuser, including while pregnant with Mr. Tabb, a

father who left the household and had no contact with his son,

and Dr. Drob has spoken about the impact of this on him and the

damage it did to him, and it is not unreasonable to assume that

someone with that deprived background would have issues later

on.

     He turned to drugs I believe when he was 13, smoked

marijuana daily and he had severe psychological problems.  He

was on antipsychotic medication as a child, and as an

adolescent he was hospitalized, institutionalized, and he had

real issues, perhaps organic brain damage, perhaps not.  Dr.

Drob talks about these issues in his report.  So these were

very significant problems, and it has a snowball effect because

he turned to drugs, he turned to the streets at a very young

age and ended up committing a series of crimes.

1          The family circumstances, your Honor, I think the fact

2     that his family is here indicates that they'll be supporting

3     him when he gets out.  There is a job waiting for him as a

4     janitor.  There has a home waiting for him.  He gets it.  He

5     fully understands the crime he committed here, and I believe he

6     will continue his rehabilitation.

7          He has had a good institutional adjustment in prison.

8     He almost completed the six month drug program which is

9     outpatient, but they moved him to the MDC because of crowding

10    situations before the last month.  He would have gotten a

11    certificate.  I would have loved to have provided that to you,

12    but he has been following rules and getting along with the

13    institution.  I think that is a good sign for how he will

14    behave on supervised release.

15         With initially what I am proposing here is a two-year

16    sentence of imprisonment followed by one year of community

17    confinement and home detention, a three year total sentence,

18    and if you include that additional confinement, that puts him

19    in the noncareer offender range.

20         I believe that that is more than sufficient punishment

21    for the 3.75 grams of crack cocaine that is involved here.

22    Your Honor has the discretion to sentence my client to a

23    sentence well below any applicable range that you found here

24    today, whether it was the 33 to 41, which I respectfully

25    believed applied, or the higher range which your Honor has

1    found to apply here.

2            But regardless, a reasonable sentence is a reasonable

3    sentence, and the guidelines are just one factor among many.

4    You've got the offense mitigating circumstances.  We stand by

5    that aiding and abetting.  That is what he did.  He has

6    committed that crime.  He is fully responsible for it, but he

7    wasn't going to make any money from the three or four hundred

8    dollars that would have been received for the sale of those

9    drugs.

10           He allowed the other person in the car to bring the

11   drugs into the car.  He committed a crime by doing that.  He

12   shouldn't have done that.  He accepts responsibility, but our

13   proffer, which is not contradicted by any other evidence, which

14   is true and accurate, which those drugs belonged to someone

15   else, and that is why he was an aider and abettor, just as

16   responsible as a principal, but it is a mitigating circumstance

17   for your Honor's discretion.

18           THE COURT:  He took his girlfriend's car and allowed

19   77 bags of --

20           MR. SIGNORELLI:  That's right.

21           THE COURT:  -- of cocaine to be secreted around the

22   gas tank and drove it around so his cousin or his friend could

23   distribute those bags.

24           MR. SIGNORELLI:  That's right, and he pleaded guilty

25   to that.

1            THE COURT:  That's correct.

2            MR. SIGNORELLI:  But --

3            THE COURT:  So he possessed it, possessed the drugs.

4            MR. SIGNORELLI:  That's right.

5            THE COURT:  He acted as if they were his even though

6    the cousin or friend got all the money from the sales.

7            MR. SIGNORELLI:  Well, more specifically, he assisted

8    his cousin.

9            THE COURT:  That is worse for selling it for yourself.

10   Selling for yourself, you need the money.  He didn't need the

11   money, it seems.  He was content to have the cousin make all

12   the money.  He uses his girlfriend's apartment as a stash

13   house.  How do I look upon this after a lifetime of crime?

14           MR. SIGNORELLI:  Your Honor --

15           THE COURT:  From the age of 13 he was committing

16   crimes.  It never stopped.  He never took a break from

17   criminality.

18           MR. SIGNORELLI:  Sometimes clients or defendants don't

19   make this job easy.  He has made mistakes.  He has committed

20   crimes.

21           THE COURT:  Your job is not easy and my job is not

22   easy.  I can't think of easiness in terms of what is just

23   punishment.  I know what just punishment is.  There is not a

24   sentence I have done about which I have any satisfaction.

25           I have to find the right sentence for Mr. Tabb, and I

1   am bothered, very bothered by his lifetime of criminality and I

2   am bothered by his involvement with his girlfriend in

3   criminality.  She is supposed to be a lodestar that will take

4   him out of criminality, and yet he sucks her in.  What do I

5   think of a person like that?  That is bad phrasing.  What do I

6   think of the acts that a person does like that?

7           MR. SIGNORELLI:  Your Honor, our position on

8   sentencing is that he should be punished, but not --

9           THE COURT:  Two years is not enough.  I am not sure

10  what is enough, but two years is far from enough.

11          MR. SIGNORELLI:  But I believe it does not have to be

12  a sentence that destroys him.

13          THE COURT:  He is 29 years' old, and maybe his problem

14  is he wasn't punished enough when he was younger.

15          MR. SIGNORELLI:  Your Honor, I believe that with the

16  requested sentence, plus additional confinement of community

17  confinement and/or home detention, plus supervised release on

18  top of that, it would be he will be a short leash with this

19  Court in order to prove himself to your Honor and to the

20  Probation Office that he can finally rehabilitate himself and

21  be a productive member of society and work and follow rules.

22          I believe he can, I really believe in this man, and

23  that is on the basis of a lot of conversations and a lot of --

24  during the most anxious, depressing time of his life, as it

25  should be, and it doesn't have to be a Draconian sentence in

1    order to accomplish all the goals under Section 3553 (a)

2    including --

3              THE COURT:  Mr. Signorelli, when he was 24, he came to

4    this Court, and he was sentenced to 36 months imprisonment,

5    notwithstanding a guideline range of 100 to 125 months.  One

6    would think -- Judge Gardephe's case -- one would think that he

7    would learn from that.  One would think that 36 months in jail

8    was a major, major reduction from what he could have gotten.

9    One would think he would change his ways, but he hasn't.

10             MR. SIGNORELLI:  In this case, the one big difference

11   is this was a much smaller amount of crack, and there is no

12   evidence other than it was a one-time event in the car, yes,

13   plus the baggies and the scales, but there is no direct

14   relationship between the baggies in the apartment and the

15   packaging material or the crack cocaine in the vehicle.

16             THE COURT:  One moment.

17             (Pause)

18             THE COURT:  I am sorry.  Go ahead.

19             MR. SIGNORELLI:  Thank your Honor.

20             Your Honor, the Second Circuit has instructed, I cite

21   some of these cases, that a sentence should be imposed that is

22   not greater than necessary in order to accomplish the purposes

23   of 3553 (a).

24             THE COURT:  So 36 months was not enough.

25             MR. SIGNORELLI:  I believe the combined 36 months here

1   is enough based on all of the circumstances that I cite in the

2   papers.

3          THE COURT:  It has to be significantly more.

4          MR. SIGNORELLI:  Your Honor, if you're considering a

5   greater sentence, I would hope that it not be any greater than

6   is necessary because it is important to realize that after his

7   sentence of imprisonment, he will be on supervised release and

8   will have to prove himself.

9          THE COURT:  That was true of the other one, too.

10          MR. SIGNORELLI:  That is going to have to be dealt

11   with after this proceeding, the probation violation.

12          THE COURT:  Judge Gardephe provided for mental health

13   treatment and substance abuse treatment on March 31, 2016.  He

14   successfully completed outpatient substance abuse treatment at

15   Daytop Village.  And after, that he was arrested.  I don't

16   know.

17          MR. SIGNORELLI:  On everything I see about him --

18          THE COURT:  He has had a tough life.

19          MR. SIGNORELLI:  He really has.

20          THE COURT:  But not everybody having a tough life

21   becomes a criminal.

22          MR. SIGNORELLI:  I think there is a way to fashion a

23   sentence here that accomplishes your Honor's concerns and the

24   sentencing objectives without being more Draconian than it has

25   to be, whether it is two years I suggested or something more,

1    whether it is one year of community confinement or something

2    more following the imprisonment, I think there is a way to both

3    punish him and give him one more chance to prove himself in his

4    30's that he can be a law abiding, productive member of

5    society.

6          He can be punished.  He can be punished harshly, but

7    not in such a Draconian way that a good part of his life, good

8    part of his freedom is unnecessarily taken away.  If he screws

9    up again on supervised release, he can face the full panoply of

10   options that this Court has.  If your Honor is willing to

11   consider what I'm requesting here, a sentence that is just

12   harsh enough to punish him, but to give him a chance to make

13   it, and he has gone through a lot.

14         I spoke to his prior lawyer, Mr. Darryl of the Federal

15   Defender's Office, and what he told me I have never forgotten.

16   When I first got involved in the case a year ago, he said what

17   would you and I -- addressing me -- what would you and I be

18   like if we grew up under his conditions?  He actually said that

19   to me, and it really struck a chord with me because speaking

20   only for myself, lots of mistakes are made in life, but if I

21   had his upbringing, his background, I think I would be very

22   worse off.

23         Fortunately, I didn't have that.  So my mistakes are

24   different, and I have a lot of compassion for my client.  I

25   think that is reflected in the papers I submitted.

1             THE COURT:  That makes you a very good lawyer.

2             MR. SIGNORELLI:  But I really believe in this man and

3    I believe he can turn his life around, but if he doesn't, your

4    Honor, you can fashion a sentence with those conditions of

5    community confinement, home detention, supervised release and

6    he will come back before you and you can tell him -- I don't

7    think this will happen, I don't think this will happen -- in

8    fact, I am convinced it won't, but if it does -- you can tell

9    him I gave you a break, Mr. Tabb, but I am confident that is

10   not going to happen.

11            I am not going to have repeat business.  I don't want

12   repeat business from Mr. Tabb as much as it is a privilege, and

13   it really is, he has been great, a great client to me, and this

14   is part of his personality, and all his lawyers I have spoken

15   to, I have spoken to his two state lawyers, I have spoken to --

16   I never heard of lawyers collectively speaking so favorably of

17   a client they didn't choose.  They're all his court appointed

18   lawyers.

19            Everyone speaks so highly of him because he has such a

20   terrific personality, a terrific character.  He has been so

21   dignified and polite and appreciative of my efforts even though

22   he is understandably and deserving suffering because of this

23   case, and I emphasize deservedly.  He is not sleeping, he has

24   severe depression and anxiety, and I think that is a good thing

25   because what it speaks to me, and I see I will proffer to this

1    Court not only as to his attorney, but as an officer of this

2    Court, I will proffer to this Court the individual deterrence

3    that I see here in my meetings with him and how remorseful he

4    is, but how much he wants to turn his life around.

5             Part of me likes the suffering he is going through at

6    MCC and now MDC.  It is a good thing.  It is punishing him

7    severely.  Those are maximum security detention facilities.

8    Some of my clients have indicated it is two or three times more

9    difficult than a designation to an institution of even a high

10   security level and especially medium.

11            These are harsh conditions, so it may be 16 months,

12   but a lot of people would say that is almost three years in a

13   medium security facility.  It is harsh imprisonment and it is a

14   good thing because he does deserve to be punished.

15            The question for your Honor, and what I am fighting so

16   hard to accomplish here for him, more than I ever have in 30

17   years of being in this and the old courthouse, is what's an

18   adequate enough punishment for this man given what he has gone

19   through and given the particulars of this offense.

20            This is not a big drug ring he is part of.  He

21   committed a crime by stupidly assisting this other person in

22   the car with those drugs.

23            THE COURT:  Try to bring your argument to a close.

24            MR. SIGNORELLI:  I will, your Honor.

25            For all the reasons set forth in the voluminous main

1    sentencing submission, the reply sentencing papers that I

2    submitted yesterday, I respectfully request a sentence that is

3    not greater than necessary to not only punish him, but also

4    accomplish all of the other aims and goals of 3553 (a), taking

5    into account the offense conduct circumstances, including the

6    3.75 grams of crack, his psychological problems, the family

7    neglect, deprivation and other issues, what I believe is his

8    extraordinary and timely acceptance of responsibility, the

9    punishment he has already received, the individual deterrence I

10   have proffered to your Honor, and his very real prospects at

11   age 29, soon to be 30, of finally turning his life around with

12   the help and support of his family.

13           I would like to thank your Honor for allowing me to

14   speak at length for my client because so much is at stake for

15   him as he awaits the imposition of sentence.  If you have any

16   further questions, I will be happy to address them.  Otherwise,

17   I respectfully rest on all the sentencing materials including

18   the exhibits that I've submitted for your consideration, your

19   Honor.  Thank you.

20           THE COURT:  Do you have any comments, Mr. Denton?

21           MR. DENTON:  There are just three things I want to

22   talk about briefly, your Honor.

23           The first is I want to highlight something Mr.

24   Signorelli just said, which is he said he talked to all of

25   Mr. Tabb's previous lawyers and they all talked about what a

1  man of great character he was, what suffering he had been

2  through, the same exact arguments Mr. Signorelli is making.

3          The thing Mr. Signorelli leaves out is that Mr. Tabb

4  broke faith with every one of them, every one of them who stood

5  in court and said he learned his lesson and give him a break

6  and he will get it right this time.  He keeps coming back.  He

7  keeps being unable to do anything other than commit crimes, and

8  so the representations of all of these lawyers about what their

9  view is of this man is not borne out by his conduct when he is

10 not in a courtroom.  When he is on the street, he is, as the

11 guidelines call him, a career offender, and his criminal record

12 is extraordinary.

13         That is the second thing I wanted to say, is that

14 under these circumstances, it is not just about Mr. Tabb.  This

15 is about the court's obligation also to reflect on his impact

16 on the community and to protect the community from that.

17         The people who he shot at, the people who he has

18 robbed, the people who sold drugs to, these are all things the

19 court has to take into account.  The fact there is an

20 explanation for them, which is that he had a terrible

21 childhood, does not mean that the community is any less at risk

22 from him.

23         So to the extent Mr. Signorelli is relying on

24 supervised release as the panacea here, so was Judge Gardephe

25 when he gave him a 30 percent sentence relative to what the

1    guidelines range was.  That did not get the message across to

2    him and it didn't protect the community.

3           So under these circumstances, your Honor is right that

4    something far more substantial is required, particularly when

5    again the career offender guidelines are not meaningless.  They

6    exist for situations like this and for people like him.  So I

7    think that is the sort of most important thing.

8           Just the final thing I want to say, another point Mr.

9    Signorelli made in talking about how --

10          THE COURT:  151 months seems to be too much.

11          MR. DENTON:  I understand that may be your Honor's

12   view.  The guidelines come to these --

13          THE COURT:  I don't know what is enough, but 151

14   months is too much.  That is 12 and a half years.

15          MR. DENTON:  That is true, your Honor.  For someone

16   who has gotten break after break after break, the guidelines

17   account for some of that.  I understand your Honor's point, but

18   when Mr. Signorelli said that this is the most important day of

19   Mr. Tabb's life.  That should have been the day he got out of

20   jail from this last sentence or the day he got sentenced by

21   Judge Gardephe.  How many more most important days in his life

22   are we going to have to have?

23          And so I think at this point it is important for the

24   court, first of all, to recognize the need to protect the

25   community from Mr. Tabb, but also send a message to him.  These

1   discount sentences he has gotten have sent the wrong message,

2   and he has continued.  It is time for him to get the message.

3   So we think that as the Probation Department recommends, a

4   guideline sentence is appropriate here.

5           MR. SIGNORELLI:  If I could just, I forgot to mention

6   one important point, if I may?

7           THE COURT:  Go ahead.

8           MR. SIGNORELLI:  It is important.

9           His criminal history is otherwise fully accounted for

10  by the lower range and for this reason.  He is in criminal

11  history Category VI whether he is or not a criminal offender.

12  What is different is only the offense level, the base offense

13  level.  I think it is important to recognize this because I

14  think it relates to the reasonableness of the sentence that

15  your Honor is about to impose.

16          His noncareer offender base offense level is 14.  What

17  the career offender range does, it bases it on a statutory

18  maximum of 20 years and it increases it not because of drug

19  quantity or any other variable, but just because of the career

20  offender designation.  It goes up from 14 to 31.  I

21  respectfully submit that that is too much for a case involving

22  a small quantity of crack cocaine and all the other

23  particulars.  I just want this court to know, and it is in the

24  papers, but it is important to recognize.

25          THE COURT:  He made 77 sales --

1        MR. SIGNORELLI:  Well --

2        THE COURT:  -- of crack.

3        MR. SIGNORELLI:  Well --

4        THE COURT:  77 people are going to buy.

5        MR. SIGNORELLI:  It depends on each transaction.

6        THE COURT:  If you buy two or three bags, that is

7   true.  That is a lot of stuff to put out in the community.

8        MR. SIGNORELLI:  That is the difference between the

9   career offender range offense level and the non-offender range

10   offense level.  It is a factor to consider in determining what

11   is a reasonable sentence.

12        THE COURT:  I will.

13        MR. SIGNORELLI:  Thank your Honor.

14        THE COURT:  Mr. Tabb, you have a right to address the

15   court if you wish.

16        THE DEFENDANT:  Yes.  Good afternoon.

17        THE COURT:  Pull that close to you to your belly and

18   stand up straight so I can hear you.

19        THE DEFENDANT:  Before I came into here today, I

20   didn't know, I was told I was supposed to make up something but

21   basically address that I am remorseful.  This case right here

22   has been the most -- (inaudible) -- at first I was looking at

23   it as just not, it wasn't, at first look at the person in the

24   car with me.  Whatever he has on him, he has done, the police,

25   we got locked up.  It has nothing to do with him,.  Now I am

I1JJTABS                        Sentence

1    going through this situation, I realize that it doesn't matter

2    who -- (inaudible) -- I take responsibility for allowing

3    somebody in my car.  At first I didn't realize that.

4              THE COURT:  You knew he was putting stash into your

5    gas cap and you knew what he was going to do with it and you

6    knew you were going to drive around when he distributed.

7              THE DEFENDANT:  Yes.  I didn't think I would be

8    basically get in trouble for the next person's situation.

9    Today really showed me that I can't do, I can't have people

10   around me that does anything like that.

11             The way I think now is not the way I thought before,

12   period.  I knew I did wrong, and that is the reason I copped

13   out and I said I did wrong.  Now I realize that.  Before I

14   didn't legalize how much wrong I did.

15             My main focus is I know how to live as a citizen.  I

16   was out there for a whole year besides the fact me catching a

17   new arrest, I completed my probation officer drug program job,

18   calling every night, I did everything, no problem.  I completed

19   the drug problem.  As far as me living as a citizen, I know

20   that.  You live and learn from your mistakes, and I learned

21   from my mistakes at this point.  I wanted to let you know that.

22             THE COURT:  Thank you.

23             MR. SIGNORELLI:  May he say one more thing?

24             THE DEFENDANT:  At the same time I want to apologize

25   to my family.  I was listening when you said not -- the fact I

I1JJTABS                         Sentence

1    got in this situation with me, I brought my girlfriend into the

2    situation.  I never looked at those type things.  As I sit down

3    and start thinking, you're actually right.  The headaches I put

4    my family through and things like that, I didn't mean to go

5    through.  I want to apologize to you, sir, and my family,

6    especially my girlfriend.

7              THE COURT:  Thank you, Mr. Tabb.

8              The judge is given instructions by statute how to

9    punish.  All the factors are fairly general.  It is hard to

10   find from these factors exactly the right place to come to.  I

11   am supposed to impose a sentence sufficient but not greater

12   than necessary to comply with the purposes set forth in

13   Paragraph 2.  That is, I have to reflect the seriousness of the

14   offense, I have to promote respect for the law and I have to

15   provide just punishment for the offense, I have to worry about

16   deterrence of you and others, I have to protect the public from

17   further crimes you might commit.  I have to provide you with

18   needed educational or vocational training, medical care and

19   other proper correctional treatment.

20             What is just punishment?  I don't know.  The

21   guidelines start, and like every judge, I believe that the

22   guideline range of 33 to 41 months is not sufficient, either

23   the bottom or the top.  The career offender range of 151 to 188

24   months is too much.  You're 29 years' old.  I feel I have to

25   give you a long sentence because you didn't get the message

from Judge Gardephe and you didn't get the message anywhere

before that.  Your lifetime has been devoted to crime, and you

don't stop, and you don't take hints and you don't take

messages.

         As I said before, one would think that 36 months would

be enough to wake you up, but you remained indifferent to the

law.  Mr. Signorelli argues emotionally and persuasively I

should give you a chance.  Every person is entitled to a

chance.  Every person is capable of being rehabilitated, so I

believe.

         But still I must give you a punishment that promotes

respect for the law, and where you have a lifetime of crime, 16

or 17 plus another two because you committed a crime while on

probation or parole or supervised release from another crime,

that is a lot of stuff, a lot of stuff.

         I rarely see that much.  So to reflect the seriousness

of what you did not only in terms of the volume of crack on

this particular venture, but also your whole life of crime, I

have to promote respect for the law, and people expect when you

do bad things, you get punished for them, and when you keep on

doing bad things, you get punished for that, too.

         I have to provide just punishment.  I don't know if

you're going to be rehabilitated or not.  I hope you will, but

I have to punish you adequately because otherwise, the

considerations I've just read out are unnecessary.  A just

1   punishment here is 10 years, 120 months, and that is so

2   ordered.  And I think you have recommendation, Mr. Signorelli?

3           MR. SIGNORELLI:  Yes, your Honor.

4           THE COURT:  Do you want him to be or confined in a

5   place where he can get mental health treatment and substance

6   abuse treatment?

7           MR. SIGNORELLI:  Yes, including the 500-hour program,

8   residential drug treatment program that the BOP offers.  I

9   think he qualifies and needs that.

10          THE COURT:  If he qualifies, that will be a BOP

11  determination.

12          MR. SIGNORELLI:  If your Honor could recommend that,

13  they take your recommendations very seriously, your Honor.

14          THE COURT:  I so recommend.

15          MR. SIGNORELLI:  I respectfully request that.

16          THE COURT:  So recommended if the BOP finds that it is

17  appropriate.

18          MR. SIGNORELLI:  Your Honor, I feel duty-bound to ask

19  this qualification question, if I may.  Would your Honor

20  consider having the last two years of that sentence spent in

21  community confinement, home detention?

22          THE COURT:  No, no.

23          MR. SIGNORELLI:  May I have a moment, your Honor?

24          THE COURT:  Yes.

25          (Off-the-record discussion)

1          MR. SIGNORELLI:  As long as the facility has the

2    proper treatment programs, I also respectfully request that he

3    be sentenced to a facility as close as possible to the New York

4    Metropolitan Area.

5          THE COURT:  Yes.  The priority is of mental health or

6    substance abuse treatment, and to the extent that it can be

7    served in a facility close to New York, I recommend that, and I

8    recommend that if he be found eligible, if the BOP considers

9    him eligible, consider him eligible for the 500-hour program.

10         MR. SIGNORELLI:  Other than that, your Honor, we have

11   no other request for recommendations.

12         THE COURT:  Following his punishment, I sentence him

13   to three years of supervised release.  The mandatory conditions

14   described on the bottom of Page 22 going on to Page 23 are

15   ordered.  I am not suspending drug testing conditions because

16   by other occasions, he is still afflicted with that addiction.

17         The standard conditions that follow on Page 23 and 24,

18   standard Conditions 1 through 13 are ordered.  The special

19   conditions of submitting his personal residence, place of

20   business, vehicle and property and so on to a search is

21   ordered.  I order also as a special condition that he be

22   considered for an outpatient treatment program approved by the

23   United States Probation Office described on Page 24 of the PSR.

24   I order that he be supervised by the district of his residence,

25   which will be the Southern District of New York.  There is a

1   mandatory special assessment of $100.00, and I order that.

2   There is no fine.  The defendant does not have the ability to

3   pay a fine.  There is no forfeiture in this case, right?

4           MR. DENTON:  That's correct, your Honor.

5           THE COURT:  He will be remanded to the Bureau of

6   Prisons.  I advise you, Mr. Tabb, that under the Constitution,

7   you have the right to appeal from all aspects of what I've

8   done, and if you can't afford a lawyer, a lawyer will be

9   provided for you free of charge.  If you wish to appeal, so

10  advise Mr. Signorelli.  Mr. Signorelli, I advise you that if

11  so, I instruct you should do so promptly.

12          MR. SIGNORELLI:  I will, your Honor.

13          THE COURT:  As I said, if Mr. Tabb can't afford a

14  lawyer, the government will provide a lawyer free of charge.

15          Underlying counts?

16          MR. DENTON:  The government moves to dismiss the

17  remaining counts of the indictment.

18          THE COURT:  So ordered.  I think that finishes our

19  activity for today.  Mr. Signorelli, I rarely have seen such

20  quantity and intensity of work.  I don't know how you feel

21  about today, but I want to tell you as a lawyer, you have

22  conducted yourself properly.

23          MR. SIGNORELLI:  I appreciate that.  Thank you for

24  that compliment, your Honor.

25          (Court adjourned)